IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| PREFERENTIAL NETWORKS IP, LLC, | § § § | |
| Plaintiff, | § § | |
| V. | § § | Case No. 2:17-cv-00197-JRG-RSP |
| SPRINT SPECTRUM L.P., VIRGIN MOBILE USA L.P., and BOOST MOBILE LLC, | § § § | JURY TRIAL DEMANDED |
| Defendants. | § § § § | |

**PLAINTIFF'S SUR-REPLY REGARDING
SPRINT'S MOTION TO DISMISS UNDER RULE 12(B)(6)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii
   Cases ................................................................................................................................ iii

   Other Authorities ............................................................................................................. iii

I.      INTRODUCTION ......................................................................................................1

II.     ARGUMENT .............................................................................................................1
   A.     Factual Disputes Must be Resolved, and Claim Construction is Required, Before any Patentability Determination Can Fairly be Made ..................................................................1

   B.     The '994 Patent Is Not Directed To An Abstract Idea ............................................................3

   C.     The '994 Patent Includes An Inventive Concept .................................................................7

   D.     The Amended Complaint Pleads Enough Fact To Show Willful and Indirect Infringement . 9

III.    CONCLUSION ........................................................................................................10

<small>
<s/>
</small>
<small/>

## TABLE OF AUTHORITIES

**Cases**

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014) ............................................................................................. 7, 9
*Device Enhancement v. Amazon*,
   2016 WL 2899246 (D. Del. May 17, 2016) ................................................................................ 8
*Diamond v. Diehr*,
   450 U.S. 175 (1981) .................................................................................................................... 3
*Enfish v. Microsoft*,
   822 F.3d 1327 (Fed. Cir. May 12, 2016) ................................................................................ 7, 8
*Huawei Tech. Co. v. T-Mobile*,
   No. 2:16-cv-00052-JRG-RSP, Order at Doc. 147 (E.D. Texas Feb. 21, 2017) .......................... 10
*King Pharms. v. Eon Labs*,
   616 F.3d 1267 (Fed. Cir. 2010) ................................................................................................... 3
*MAZ Encryption v. Blackberry*,
   2016 WL 5661981 (D. Del., Sept. 29, 2016) .............................................................................. 4
*McRO v. Bandai*,
   837 F.3d 1299 (Fed. Cir. 2016) ................................................................................................... 5
*Orostream LLC v. ABS-CBN International*,
   2015 WL 5836949 (E.D. Tex. Oct. 1 2015) ............................................................................ 6, 7
*PanOptis Pat. Man. v. Blackberry,*
   No. 2:16-cv-00059-JRG-RSP, Doc. 110 (E.D. Texas Feb. 10, 2017), *report and rec. adopted*, No. 2:16-cv-00059-JRG-RSP, Doc. 118 ..................................................................................... 10
*Perdiemco v. Industrak*,
   2:15-cv-727-JRG-RSP (E.D. Tex. Sept. 21, 2016) ..................................................................... 3
*Protegrity USA, Inc. v. Netskope, Inc.*,
   No. 15-cv-02515, 2015 WL 6126599 (N.D. Cal. Oct. 19, 2015) ................................................ 7
*Speedtrack, Inc. v. Amazon.com, Inc., et a.*,
   No. C 09-04479-JSW, Doc 163 (N.D. Cal. Jan. 23, 2017) ..................................................... 4, 8
*Tridia vs. Sauce Labs*,
   1-15-cv-02284 (N.D. Ga. Sept. 28, 2016) ................................................................................... 8

**Other Authorities**

Technopedia Definition of Network Architecture at
   https://www.techopedia.com/definition/8549/network-architecture ........................................... 3

## I. INTRODUCTION

Sprint's Reply (Doc. 27) seeks to gloss over the issues with an overgeneralized, oversimplified recitation of an alleged abstract idea; its attempt to pick apart the claims by focusing on throttling in a vacuum rather than focusing on the claims as a whole; and its attempt to gloss over meaningful claim limitations by arguing, without support from record evidence, that essentially everything recited in the claims except throttling should be ignored because it is allegedly "generic." Fundamentally, Sprint's many meritless arguments lack legal or factual support, including any record evidence to back up its many assertions. Moreover, the record evidence cited in PrefNet's Response refutes Sprint's assertions. Furthermore, at a minimum, there are factual disputes and factual issues that would need to be resolved prior to any disposition of this case on the pleadings. Finally, including for the reasons noted in PrefNet's Response and further herein, Sprint's motion to dismiss PrefNet's willfulness and indirect infringement claims is meritless and at odds with *Halo* and post-*Halo* court decisions.

## II. ARGUMENT

### A. Factual Disputes Must be Resolved, and Claim Construction is Required, Before any Patentability Determination Can Fairly be Made

PrefNet's Response (Doc. 26) points out that Sprint has not met its high burden at the pleadings stage of overcoming the presumption of validity and proving by clear and convincing evidence, including with more than mere unsworn argument, that the claim limitations are somehow routine, well-understood, conventional, generic, existing, commonly used, well known, previously known, typical, and the like, including when viewed by one of ordinary skill in the art as of the April 18, 2000 priority date for the '994 patent. Including as noted in PrefNet's Response, a multitude of fact issues preclude a finding of § 101 ineligibility at this stage. For example, there is at least a genuine issue of material fact as to whether the claimed invention involves only well understood, routine, conventional, etc. activity. There are also genuine issues regarding the

meanings of several claim terms that must be resolved before a ruling in favor of Sprint could be appropriate. Here, there are enough facts to state a claim to relief that is plausible on its face, including when all factual allegations in the complaint are accepted as true and all reasonable inferences are drawn in favor of PrefNet. This includes all the factual allegations contained in PrefNet's Amended Complaint and in its Response, which alone provide multiple grounds requiring denial of Sprint's Motion. At a minimum, genuine issues of material fact exist –such as, for example, whether the claimed invention was well known, routine, conventional, etc. over sixteen years ago at the time of the invention; whether the software and hardware that implement the claimed system were generic as alleged, and whether the claims preempt any abstract ideas – that preclude granting a Rule 12(b) Motion, especially at this early stage. Sprint's Reply does not meaningfully address the material factual disputes between the parties beyond its erroneous reasoning that facts would not matter if the claims were sufficiently oversimplified and overgeneralized, and if claim limitations were simply ignored and glossed over as irrelevant.

Sprint chides PrefNet for not using limited pages in a 101 response to also submit its opening *Markman* brief. In its Reply, Sprint wrote that "this Court does not need to construe any of the claim terms in the '994 Patent because they are… generic computer terms." Reply at 524[1]. It appears that Sprint seeks a broad "generic" construction for purposes of its 101 motion but that it intends to seek a narrower, more specific construction for purposes of claim construction and its infringement positions. This alone illustrates why the Court should not rule on this 101 motion prior to claim construction proceedings. It would be exceedingly unjust for the Court to accept Sprint's invitation to avoid construing the claim terms because they are supposedly "generic" when even Sprint apparently contends they are narrower and more specific.

At footnote 2 to its Reply (Reply at 524), Sprint points out that most of the terms that

---

[1] No page numbers provided in Sprint's Reply. PrefNet will refer to the PageID # ascribed by the Court's ECF system.

PrefNet states would need to be construed reside in claims 1, 4, and 6, and then argues that this somehow supports Sprint's argument that claim 1 is "representative" of the '994 patent. Sprint's logic is flawed and its conclusion does not flow from the premise. When, as here, a movant relies on a representative claim in its § 101 analysis, it bears the burden of showing that the other asserted claims are "substantially similar and linked to the same abstract idea." *Perdiemco v. Industrak*, 2:15-cv-727-JRG-RSP, p.13 (E.D. Tex. Sept. 21, 2016). Sprint has not met that burden.

B.  **The '994 Patent Is Not Directed To An Abstract Idea**

For a 101 analysis, claims must be read as a whole (*see Diamond v. Diehr*, 450 U.S. 175 (1981)), and all claim limitations must be duly considered. *King Pharms. v. Eon Labs*, 616 F.3d 1267, 1277 (Fed. Cir. 2010). It is improper to ignore claim limitations in this analysis, although ignoring them is exactly what Sprint attempts when seeking to overgeneralize and oversimplify the claims, while ignoring their actual claim language and limitations. As the Court is surely aware from its extensive experience in cases involving networks, the specific functions of networked devices may be controlled or implemented via higher or lower levels of network architecture. *See, e.g.,* https://www.techopedia.com/definition/8549/network-architecture ("Network Architecture ... hardware components used for communication, cabling and device types, network layout and topologies…"). Nonetheless, higher levels of network architecture still involve network architecture and specific applications in order to meet the claim elements. In its myopic focus on an overgeneralized recitation of the claims, Sprint improperly seeks to ignore the networked architecture, and relationship of the claim elements (*e.g.,* first/second computer system), and indeed the claim elements themselves which define the meets and bounds of the actual claimed invention. As noted in PrefNet's Response, the novel and meaningful claim limitations comprise implementing the specific claimed steps and functions in specific applications for improving computer and network applications, including in the context of the networked architecture of the

claimed invention (in contrast to, *e.g.*, the disclosure in Kalkunte of a very different architecture comprising the transfer of data from a CPU to a FIFO register of an Ethernet controller).

Further, the actual limitations of the claims of the '994 patent form a part of what distinguished the claims as being novel over the prior art of record, including Kalkunte and Danneels. Sprint suggests that novelty over the prior art is irrelevant to the 101 analysis, yet courts have held just the opposite. *See, e.g.*, *Speedtrack, Inc. v. Amazon.com, Inc., et a.*, No. C 09-04479-JSW, Doc. 163, 7-8 (N.D. Cal. Jan. 23, 2017) (noting that the patent's improvements over the prior art support a finding at step two). But Sprint cannot credibly deny that the manifest differences between the '994 claimed invention and the state of the art, including as shown in the specification and prosecution history, refute Sprint's unsupported allegations that the '994 claimed technology was somehow known, generic, etc.

PrefNet's Response showed that Sprint has, if anything, merely alleged an abstract idea indicative of how prior art of record might work, and that the '994 claims were allowed because they have novel, meaningful limitations that distinguish them over the prior art. Sprint's Reply fails to substantively address this important point because Sprint has no meaningful response. Some of the technological and architectural benefits of the inventions claimed by the '994 patent are discussed in Section II.A of PrefNet's Response. When deciding issues of § 101 in a motion for judgment on the pleadings, "the Court must take the specification's statements about the purported invention to be true." *MAZ Encryption v. Blackberry*, 2016 WL 5661981, *5 (D. Del., Sept. 29, 2016). Sprint's Reply does not, and cannot, refute these benefits.

The discussion of the relevant prosecution history Section II.B of PrefNet's Response shows how the prior art Kalkunte and Danneels, which represent the state of the art at the time of the invention, involved substantially different techniques to address substantially different problems, and achieve substantially different results. In its Reply, Sprint states that the "references

to prosecution history are beside the point because allowance of the '994 patent's claims over prior art does not make them patent eligible." The foregoing illustrates that Sprint is incorrect when it alleges that the '994 patent claims are just applying a generic computer to prior art processes, and that Sprint is also incorrect when it alleges that the claimed subject matter was conventional, well known, oft applied, etc. As pointed out in PrefNet's Response, the approach was unconventional, including as distinguished from prior art techniques.

Sprint has the burden of proving, using "record evidence" and not just "attorney's argument," that the abstract idea exception should be applied to prevent patenting of claims that abstractly cover results where it matters not by what process or machinery the result is accomplished. *McRO v. Bandai*, 837 F.3d 1299, 1307; 1314 (Fed. Cir. 2016). Yet Sprint's Reply, like its Motion, consists of numerous case citations with mere attorney advocacy lacking support from record evidence or any application of the cited cases to any record evidence.

PrefNet's Response showed how Sprints "playground" analogy is inapplicable. Sprint's Reply incoherently mischaracterizes PrefNet's criticism of the playground analogy and demonstrates a gross misunderstanding of throttling as disclosed in the claims and how this playground analogy would apply. First off, Sprint fails to recognize the difference between a rate at which something is being sent/received, and the actual amount of something being sent/received by stating "[f]or the '994 Patent, it's bandwidth [that is constrained], and for the analogy, it's playground equipment [that is constrained]." Response. For the analogy to work, a playground user would need to play on less of the playground, allowing other users to take advantage of some of the other playground equipment. Where the analogy breaks down, and therefore does not work at all, is the fact that a playground user cannot use more than one piece of equipment at a time. This is in stark contrast to throttling of network data, as the bandwidth of the network resources can be used by one or few users. The playground analogy fails to appreciate the limiting of a rate,

rather than limiting an amount. If this is Sprint's best attempt for arguing a prior art analogy, Sprint's Motion should certainly be denied.

As noted in PrefNet's Response, including as evidenced by the claims, specification, and prosecution history, the claimed invention was not practiced by others prior to the '994 invention, nor was it a well-known, often applied, fundamental economic or conventional business practice, nor was it a practice to which general-purpose computer components were added after the fact. The claimed invention is not directed to a longstanding commercial practice, nor does it merely apply generic or general purpose computers to prior art methods, computer-readable media, or systems. Amended Complaint, ¶¶ 31, 39, & 47.

Sprint's reliance on *Orostream* is misplaced. *See* Motion at 9-10; Reply at 527; *see also Orostream LLC v. ABS-CBN International*, 2015 WL 5836949, *2 (E.D. Tex. Oct. 1 2015). Unlike in *Orostream,* here, including when all factual allegations in the complaint are accepted as true and all reasonable inferences are drawn in favor of PrefNet, there is ample evidence to show the '994 claims cover patent eligible subject matter, and that, at the very least, there are genuine disputes of material facts, such as whether some of the '994 claim terms are generic or conventional. Additionally, claim construction was not necessary in *Orostream* as it is here. *Id.*

Further, the patent in *Orostream* only had 1 independent claim. *Id.* at *1. Here, there are multiple independent claims with noticeable differences preventing a simple analysis of 1 claim to deem the whole patent as ineligible subject matter. In *Orostream*, this Court found "the asserted claim is directed to the abstract idea of adjustment of the rate of information transfer based on feedback." *Id.* at *2. The claims at issue here can be distinguished as having much more limiting language, such as an effective rate being throttled based on "a quantity of other data previously transferred to the second computer system," instead of based on generic feedback, and "determining to delay a transmission of a second, subsequent portion of the requested data to the

second computer system on order to cause the second portion to be transmitted to the second computer system at a second effective rate that is slower than the first effective rate" ('994 patent, claim 1) rather than merely "adjusting the rate" (*Orostream*, 2015 WL 5836949 at *2). Additionally, to "minimize[e][] additional communication delay" is the exact opposite result sought after in the '994 patent. The claim analyzed in *Orostream* cannot be said to be substantially similar to the claims found in the '994 patent. Further, this court in *Orostream* found that unlike *DDR Holdings*,[2] the problem addressed was not unique to computers. Here, the '994 seeks to solve the problem of sharing network resources, *e.g.* a collection of connected computers and hardware components such as radio antennas, fairly among multiple users, something that is absolutely necessarily rooted in computers. This is exemplified by the attempted inapplicable playground analogy given by Sprint.

In its Reply, Sprint also cites to *Protegrity*, however this case can be readily distinguished. The claims in *Protegrity* cover different technology, namely methods for creating access policies to a database and limiting access if a user exceeds the terms of the applicable policy. *Protegrity USA, Inc. v. Netskope, Inc.*, No. 15-cv-02515, 2015 WL 6126599, *1 (N.D. Cal. Oct. 19, 2015). Proper access to a database is clearly not the same as bandwidth management. Further, the procedural posture of *Protegrity* differed substantially from the case at bar. There, the plaintiff, in a related case had already fully briefed claim construction and the Court had held a *Markman* hearing. Neither is the case here.

C. **The '994 Patent Includes An Inventive Concept**

Contrary to the invitation in Sprint's Reply, this Court must avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims. In *Enfish*, the Court reiterated that the § 101 analysis must not be divorced from the specific

---

[2] *See DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014).

language of the claims, and that, at step one and step two of the *Alice* test, a court must look to the claims as an ordered combination, without ignoring the individual steps. *Enfish v. Microsoft*, 822 F.3d 1327, 1331 (Fed. Cir. May 12, 2016). Further, in the recent *Tridia* case, the court held a patent on remote access software as comprising an improvement in an existing technological process and thus patent eligible. *Tridia vs. Sauce Labs*, 1-15-cv-02284 (N.D. Ga. Sept. 28, 2016). In so holding, the court noted that where a patent describes a solution which "overcomes a flaw in existing technology" and "which solves the prior art problems" noted in the patent, the court could not "say as a matter of law at this stage that the patent does not describe an inventive concept." *Id.* at 20-21. Further, courts have held that such solutions to problems in the prior art support a finding of technological improvements at step two. *See, e.g., Speedtrack*, No. C 09-04479-JSW, Doc. 163, 7-8. Sprint's Reply does not dispute that the '994 claimed invention overcomes flaws in network management technology, including those specifically noted in the patent and discussed by PrefNet.

Improvements in computer-related technology, such as the instant claims, and claims directed to software, are not inherently abstract. *Enfish*, 822 F.3d at 1337. Further, even if Sprint was correct in arguing a pre-internet analog, which it is not, "the existence of a pre-Internet analog does not end the inquiry, so long as the 'focus of the claims is on [a] specific asserted improvement in computer capabilities' rather than a process 'for which computers are invoked merely as a tool.'" *Device Enhancement v. Amazon*, 2016 WL 2899246, *10 (D. Del. May 17, 2016). Specifically, when software-implemented claims are directed, as these claims are, to an improvement to computer functionality, they are not abstract. *Enfish*, 822 F.3d at 1335-36.

PrefNet's Response points out that dependent claims 2-7, 9-15, and 17-18 also contain additional unconventional, non-routine, novel, meaningful, and inventive claim limitations, as specifically noted therein. *See also* Amended Complaint, ¶¶ 32-34, 40-42, & 48-49. Sprint's Reply ignores these claim limitations, instead meritlessly maintaining that somehow claim 1 is

"representative" of all claims, despite Sprint lacking support for this overbroad assertion.

Sprint misstates PreNet's position in alleging that "Preferential Networks does not seriously dispute that the '994 Patent relies on generic and conventional computing equipment" (Doc. 27). *See, e.g.,* Response at 22. As noted in PrefNet's Response, the '994 claims are "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *See DDR Holdings*, 773 F.3d at 1257. These inventions are necessarily rooted in computer technology, including network management and bandwidth allocation technology, including because the claims of the '994 patent comprise specific hardware and software configured to transfer information to a plurality of client devices in accordance with bandwidth-limiting and bandwidth-adjustment techniques. *See* Response at 22. Such specific hardware and software overcome problems specifically arising in the realm of computer networks and necessarily rooted in computer technology. As such, the claims overcome a technical problem per *DDR Holdings* and also "effect an improvement in any other technology or technical field."

PrefNet's Response points out how the machine-or-transformation test supports patentability. Sprint's Reply fails to offer any analysis but simply states "[t]he machine-or-transformation test is no help." Reply at 530. Sprint has no meaningful reply to this. As noted in PrefNet's Response, there no evidence that the claims would preempt any field or grant PrefNet a monopoly over an abstract idea. Sprint's Reply alleges that "the '994 Patent would preempt the underlying abstract idea," however, Sprint still lacks any record evidence or persuasive facts or argument to substantiate this grossly overbroad and incorrect assertion.

D.     **The Amended Complaint Pleads Enough Fact To Show Willful and Indirect Infringement**

Finally, Sprint's Motion to Dismiss indirect infringement and willfulness and enhanced damages allegations was mooted by PrefNet's Amended Complaint. *See* Amended Complaint ¶¶ 55-56. The new arguments in Sprint's Reply are contrary to *Halo* and post-*Halo* decisions cited in

PrefNet's Response and also contrary to recent decisions from this Court. *See PanOptis Pat. Man. v. Blackberry,* No. 2:16-cv-00059-JRG-RSP, Doc. 110, p. 11 (E.D. Texas Feb. 10, 2017) ("PanOptis alleges actual notice of the patents, Dkt. No. 1 ¶ 103, and infringement thereafter … the Court considers the allegations sufficient to plausibly infer that BlackBerry engaged in the type of culpable behavior described in *Halo*"), *report and rec. adopted*, No. 2:16-cv-00059-JRG-RSP, Doc. 118; *Huawei Tech. Co. v. T-Mobile*, No. 2:16-cv-00052-JRG-RSP, Order at Doc. 147, p. 7 (E.D. Texas Feb. 21, 2017) ("*Halo* eliminated *Seagate*, and … [c]ulpability can arise pre- or post-suit…"). Sprint's demand for unspecified "more facts" is meritless and inconsistent with *Halo*, and such an argument has previously been rejected in the *PanOptis* case cited above and in the *Blitzsafe, DermaFocus*, and *Simplivity* cases cited by PrefNet.

PrefNet's Amended Complaint also recites enough facts, when all factual allegations in the complaint are accepted as true and all reasonable inferences are drawn in favor of PrefNet, to show a potential finding of indirect infringement. Contrary to Sprint's erogenous bald assertion, PrefNet has not abandoned its indirection infringement claims.

### III.   CONCLUSION

For these reasons, and those stated in PrefNet's Response, the facts alleged in the Amended Complaint (*see* above) and apparent from the plain language of the '994 patent and its prosecution history, which the Court must accept as true on a Rule 12(b)(6) motion, require denial of Sprint's Motion, including when all reasonable inferences are drawn in favor of PrefNet. Including because Sprint has failed to meet its heavy burden for Rule 12 dismissal, the disputed factual issues – including whether the claimed inventions were "routine," "conventional," etc. over sixteen years ago and whether the claims preempt any abstract ideas – noted herein, and for those other reasons stated herein, and in PrefNet's Response, Sprint's Motion must be denied.

|  |  |
|---|---|
| June 20, 2017 | Respectfully submitted, |
|  | /s/ *John J. Edmonds* <br> John J. Edmonds – Lead Counsel <br>   jedmonds@ip-lit.com <br>   Texas Bar No. 789758 <br> Stephen F. Schlather <br>   sschlather@ip-lit.com <br>   Texas Bar No. 24007993 <br> Shea N. Palavan <br>   spalavan@ip-lit.com <br>   Texas Bar No. 24083616 <br> Brandon G. Moore <br>   bmoore@ip-lit.com <br>   Texas Bar No. 24082372 <br> Eric R. Carr <br>   ecarr@ip-lit.com <br>   Texas Bar No. 24091261 <br> **COLLINS, EDMONDS,** <br> **SCHLATHER & TOWER, PLLC** <br> 1616 South Voss Road, Suite 125 <br> Houston, Texas 77057 <br> Telephone: (281) 501-3425 <br> Facsimile: (832) 415-2535 <br><br> *Attorneys for Plaintiff,* <br> *Preferential Networks IP, LLC* |

### CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

|  |  |
|---|---|
| June 20, 2017 | /s/ *John J. Edmonds* <br>   John J. Edmonds |